**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RURAL WATER DISTRICT NO. 3, )<br>WASHINGTON COUNTY, OKLAHOMA, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>OWASSO PUBLIC WORKS AUTHORITY, )<br>f/k/a OWASSO UTILITY AUTHORITY, )<br>)<br>Defendant, Third- )<br>Party Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>UNITED STATES DEPARTMENT OF )<br>AGRICULTURE, a governmental agency, ) | No. 06-CV-231-JHP-FMH |

**ORDER**

Now before the Court is Defendant and Third-Party Plaintiff's Motion to Vacate Injunction Dismiss (Docket No. 24), Plaintiff's and Third-Party Defendant's Response to said motion, and Defendant and Third-Party Plaintiff's Reply. Pursuant to Federal Rule of Civil Procedure 60(b) the Owasso Public Works Authority ("OPWA"), formerly known as the Owasso Utilities Authority ("OUA"), requests the Court enter an Order vacating the Judgment entered in favor of the Washington County Rural Water District No. 3 (the "District") on July 3, 1979, in Northern District Oklahoma Case No. 1977-CIV-0099-E. More specifically, the OPWA seeks an Order declaring the injunction contained in the July 3, 1979 Judgment lapsed or was dissolved as of the time the District repaid its federal loans in 1989, and declaring the injunction is no longer enforceable. As an alternative, the OPWA requests the Court find the July 3, 1979 Judgment lacks the required level of specificity and clarity as to the nature of the prohibited activities, the geographic scope of the

injunction, and the temporal scope of the injunction. On this basis, the OPWA requests an Order finding the injunction was always and currently remains unenforceable.

**BACKGROUND**

The OPWA has initiated water service to St. John Owasso, located at 12451 E. 100th St. N., Owasso, Oklahoma. When completed, St. John will be a 60-bed capacity, 106,000-square-foot hospital facility featuring a 24-hour emergency center, labor and delivery, surgery, and other medical services.

In its April 25, 2006 Complaint, Plaintiff claims the exclusive right to serve water to the St. John Owasso location. As noted by the OWPA, initially this case appears to be nothing more than yet another 7 U.S.C. §1926(b) action, where *Sequoyah County* [1] and *City of McAlester* [2] tests for "made service available" should be applied to determine whether the District is entitled to §1926(b) protection. However, this case is different in that twenty-seven years ago, before the "made service available" test was defined by the Tenth Circuit in *Sequoyah County*, the U.S. District Court for the Northern District of Oklahoma entered an injunction that would appear to extend the District's protection to the District's entire state-law geographic territory.[3] The OPWA contends the District is attempting to use the July 3, 1979 Judgment to enforce this broader protection[4] against the OPWA,

---

[1] *Sequoyah County Rural Water District No. 7 v. Town of Muldrow*, 191 F.3d 1192 (10th Cir. 1999), cert. denied, 529 U.S. 1037, 529 U.S. 1049.

[2] *Pittsburg County Rural Water District No. 7 v. City of McAlester*, 358 F.3d 694 (10th Cir.), cert. denied, 543 U.S. 810, 543 U.S. 811 (2004).

[3] The injunction permitted the OUA to continue to serve 223 homes located in the District's state-law geographic territory. Subsequent orders and agreements gave the OUA and its successor, the OPWA, the authority to serve additional locations within the District's state-law geographic territory.

[4] The July 3, 1979 Judgment provides greater protection because it is based upon the District's state-law geographic territory, rather than on the District's federal service area, which would be defined by the "made service available" test. The Tenth Circuit has held that

and avoid the factually-intensive[5] question of whether the District "made service available" to the St. John Owasso location.

The Court finds the District's effort to enforce the July 3, 1979 Judgment is without merit. The law governing Section 1926(b) protection has changed significantly during the twenty-seven years that have passed since entry of the July 3, 1979 Judgment. But more fundamentally, the facts have changed in a manner that caused the injunction contained in the July 3, 1979 to lapse. The statutory text of Section 1926(b), and the case law interpreting Section 1926(b), make clear that Section 1926(b) protection lapses when a rural water district's federal debt is retired. Here, the District's federal debt was retired in 1989. For more than a decade after 1989, the District owed no money on a qualifying Section 1926(b) indebtedness. The District's current Section 1926(b) protection (to the extent that it exists) is based upon loans that were closed in 2000.

The Tenth Circuit has made clear that no violations of Section 1926(b) can occur during a time period in which there is no qualifying Section 1926(b) indebtedness. *Pittsuburg County Rural Water District No. 7 v. City of McAlester*, 358 F.3d 694, 712 (10th Cir.), cert. denied, 543 U.S. 810, 543 U.S. 811 (2004). *See also Rural Water System #1 v. Sioux Center*, 967 F.Supp. 1483, 1530 (N.D. Iowa 1997)("If the association again becomes indebted to the FmHA, its protected service

---

"[f]ederal, not state law, controls the geographic scope of the §1926 protections." *Pittsburg County Rural Water District No. 7 v. City of McAlester*, 358 F.3d 694, 716 n.6 (10th Cir.), cert. denied, 543 U.S. 810, 543 U.S. 811 (2004). *See also Rural Water System #1 v. Sioux Center*, 967 F.Supp. 1483, 1530 (N.D. Iowa 1997)("State law, and only state law, . . . defines a municipality's right to annex portions of the association's service area, just as state law, and only state law, otherwise defines where it is the association can legally initiate or continue to provide service. If the association again becomes indebted to the FmHA, its protected service area is defined by state law as of the date of the renewed indebtedness.").

[5] *See Sequoyah County Rural Water District No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1201-06 (10th Cir. 1999)(finding material issues of fact on the issue of whether the rural water district had "made service available"), cert. denied, 529 U.S. 1037, 529 U.S. 1049 (2000).

*area is defined by state law as of the date of the renewed indebtedness."*). With the intervening ten year gap in federal indebtedness and the substantial change in the law governing Section 1926(b) protection in the Tenth Circuit, the District cannot base its current claim of Section 1926(b) protection on the July 3, 1979 Judgment.

Further, Fed.R.Civ.P. 65(d) provides that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in its terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." The Tenth Circuit strictly construes Rule 65 of the Federal Rules of Civil Procedure. *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370-71 (10th Cir. 1996). The Tenth Circuit has said:

> It is, of course, well accepted that an injunction must be worded in such specific terms and with such detail as to put the party enjoined on notice of precisely what he is called upon to do or refrain from doing. It cannot be so general as to leave the party open to the hazzard of conducting business in the mistaken belief that it is not prohibited by the injunction and thus make him vulnerable to prosecution for contempt.

Williams v. United States, 402 F.2d 47, 48 (10th Cir. 1967).

More recently, the Tenth Circuit has required that an injunction order must be "clear enough to place Defendant on notice of what he must do to comply." *Federal Trade Comm'n v. Kuykendall*, 371 F.3d 745, 761 (10th Cir. 2004). Similarly, the United States Supreme Court has stated that "[a]n order too vague to understand contravenes due process standards: It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. Rockford*, 408 U.S. 104, 108 (1972). In the context of a civil contempt proceeding, the order alleged to have been disobeyed must have been clear and unambiguous. *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 75-76 (1967). In rendering

an injunction, the court must set out its directive in specific detail as an unequivocal demand. *Herron v. Chicago*, 619 F.Supp. 767, 769 (D.C. Ill. 1985). Indeed, any ambiguities or omissions in the order are construed in favor of the party charged with contempt. *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 377 (10th Cir. 1996).

In this case, the July 3, 1979 Judgment does not define the types of services - activities and conduct – that would fall within the scope of the injunction. "[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Diapulse Corp. of Am. V. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980). "A decree is vague when the delineation of the proscribed activity lacks particularity." *CF&I Steel Corp. v. United Mine Workers of Am.*, 507 F.2d 170, 173 (10th Cir. 1974).

The July 3, 1979 Judgment is open to multiple interpretations of the prohibited "expansion of services." The July 3, 1979 Judgment could be interpreted as allowing an expansion of water services. However, the July 3, 1979 Order accompanying the Judgment seems to limit the scope of the injunction to the supply of "running household water" in rural areas, while at the same time suggesting the injunction does not prohibit the OUA from providing water services used for fire protection.

The OWPA alleges "[t]his carve-out for fire protection did not result in a benefit to the municipality. Rather, the exclusion of fire-protection services from the analysis substantially reduces the burden upon the rural water district to actually serve the area to which it claims monopoly protection. As a result of this carve-out appearing in the July 3, 1979 Order, courts and parties have struggled with the issue of whether rural water districts are required to provide fire protection, and whether water services for fire protection should be considered in the "made-service-available" evaluation. Federal regulations have subsequently answered the question. The federal

regulations adopted by the U.S. Department of Agriculture require federally-indebted rural water districts to "have sufficient capacity to provide reasonable fire protection to the extent practicable." 7 C.F.R. §1780.57(d). Rural water districts thus cannot escape fire protection when attempting to establish §1926(b) protection." (OPWA's Motion to Vacate Injunction at 19-20).

In the instant case, the District has focused its litigation upon the OPWA's provision of water services to St. John Owasso. The District contends that "if the reasoning of the July 3, 1979 Order were applied, and §1926(b) protection were allowed to prevent the OPWA from providing non-fire-protection-related water services to the hospital, then the public interest would be harmed directly. It would no longer be industrial parks and residential subdivisions that are held hostage, as was the case in *Sequoyah County* and *City of McAlester* cases. Instead, here, the District would be empowered to hold hostage a hospital by providing insufficient water services for fire protection needs, all the while claiming a monopoly to provide water services to the hospital facility." *Id. at 20-21.*

In this regard, the District contends "the protection provided by §1926(b) does not extend to, or require, provision of water for fire protection." (District's Response at 16). The District further alleges "the regulation cited by the [OWPA] does not alter or change this well established rule. The language of the regulation has not been amended subsequent to later cases." *Id.*

Irrespective of these arguments, the July 3, 1979 Judgment does not contain the differentiation between water necessary for fire protection, and non-fire-protection-related water services. The July 3, 1979 Judgment only uses the term "services." It is unclear from the face of the July 3, 1979 Judgment exactly what types of services the injunction would prohibit. As a result, the July 3, 1979 Judgment is vague, and enforcement of it would violate basic fairness. *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980); *CF&I Steel Corp. v. United Mine*

*Workers of Am.*, 507 F.2d 170, 173 (10th Cir. 1974).

Additionally, the July 3, 1979 Judgment does not define the phrase, "the geographical confines of the territory of Plaintiff." A review of the Order would indicate that the term "territory" is a reference to "the territory which they have authority to operate under, by creation of Rural Water Distirct #3." Alternatively, the term "territory" might be limited to that portion of the District's state-law geographic territory that was actually served by the District at the time of the entry of the July 3, 1979 Judgment. Although it adds no clarification to the issue, the Order states that "[t]he territory serviced by Plaintiff encompasses certain areas within Washington, Tulsa and Rogers Counties." As a result, the term "territory" is not defined adequately to enable OPWA to, with any level of certainty, comply with the injunction. In *Diapulse*, the U.S. Court of Appeals for the Second Circuit held that unless the court was able to identify the proper geographical limitation of an injunction, "[a] knowledgeable determination as to whether the injunctive provisions of the award contravene public policy [could] not be made.*" Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980). Accordingly, the July 3, 1979 Judgment fails for vagueness based on its lack of definition of the injunction's geographic scope.

Finally, the July 3, 1979 Judgment provides no indication of the temporal scope of the injunction. In *Diapulse*, the U.S. Court of Appeals for the Second Circuit remanded an injunctive order to the trial court for modification due to a lack of an adequately-defined geographic and temporal scope. *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980). "Both parties and the district court had assumed without question that the injunction was intended to be everlasting, despite the fact the word 'permanently' or its equivalent appeared nowhere in the award." <u>Id</u>. Similarly in this case, neither the July 3, 1979 Judgment nor the July 3, 1979 Order contain the term "permanently." Based on these factors, the July 3, 1979 Judgment is void for a lack

of a clearly-defined temporal scope. With these three fundamental terms left open and without definition – scope of conduct, geographic scope, and temporal scope - the July 3, 1979 Judgment was never sufficiently clear to warrant enforcement against OPWA.

Therefore, the Court finds the injunction contained in the July 3, 1979 Judgment lapsed or was dissolved as of the time the District repaid its loans to the FmHA in 1989, and the injunction is no longer enforceable.  Further, the Court finds the July 3, 1979 Judgment lacks the required level of specificity and clarity as to the nature of the prohibited activities, the geographic scope of the injunction, and the temporal scope of the injunction. Accordingly, Defendant's Motion to Vacate Injunction (Dkt. #24) is granted.

IT IS SO ORDERED this 7th day of January, 2007.

James H. Payne
United States District Judge
Northern District of Oklahoma