# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RURAL WATER DISTRICT NO. 3, ) <br> WASHINGTON COUNTY, OKLAHOMA, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> OWASSO PUBLIC WORKS AUTHORITY, ) <br> f/k/a OWASSO UTILITY AUTHORITY, ) <br> ) <br> Defendant, Third- ) <br> Party Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> AGRICULTURE, a governmental agency, ) <br> ) <br> Third Party Defendant. ) | No.  06-CV-231-JHP-FMH |

## ORDER

Now before the Court is the third party defendant's, the United States Department of Agriculture, a governmental agency's ("USDA") Motion to Dismiss (Docket No.39), the plaintiff's, Rural Water District No. 3 Washington County, Oklahoma's ("Water District"), and the defendant, third-party plaintiff's, the Owasso Public Works Authority's, formerly known as the Owasso Utilities Authority's ("OPWA") Responses to said motion, and the USDA's Replies. Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (2), the USDA raises the issue of whether this Court holds jurisdiction over the OPWA's legal challenges against the USDA in (1) loaning money to the Water District in the absence of state-law authority giving the Water District the authority to bind the State of Oklahoma to the provisions of Section 1926(b), and (2) failing to follow the USDA's own guidelines requiring the USDA to maintain a status of lender of last resort.

It is well settled that the United States (or its agencies) can only be sued to the extent the United States has waived sovereign immunity. *See United States v. Sherwood, 312 U.S. 584, 586 (1941)*. Waiver of sovereign immunity must be explicit and cannot be implied. *Villescas v. Abraham, 311 F.3d 1253, 1256-57 (10th Cir. 2002)*. Sovereign immunity is a jurisdictional bar to suits against federal agencies. *Fed. Deposit Inc. Corp. v. Meyer, 510 U.S. 471, 475 (1994)*. Within the First Amended Third-Party Complaint (Dkt# 28), the OPWA cites to a number of statutes to support its contention that the Court has jurisdiction in this matter against an agency of the United States. However, the only relevant statute which does in fact confer jurisdiction on this Court is the Administrative Procedure Act ("the APA"), 5 U.S.C. §702.

The APA contains a limited waiver of the United States' sovereign immunity and provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702. To proceed under the APA, the OPWA must "show there has been some final agency action and must demonstrate their claims fall within the zone of interests protected by the statute forming the basis of their claims." *Colo. Envtl. Coalition v. Wenker, 353 F.3d 1221, 1235 (10th Cir. 2004)(citing State of Utah v. Babbit, 137 F.3d 1193, 1203 (1998)(internal quotation marks omitted)*. Although the APA provides the general right to judicial review of agency actions, it also limits it by establishing when such review is available.

Only if a government agency takes definitive action, after the exhaustion of administrative remedies, can Section 702 waive the sovereign immunity of the United States. *See 5 U.S.C. 704*. However, "the prospect of pervasive oversight by federal courts over the manner . . . of agency compliance with congressional directives is not contemplated by the APA." *Norton v. S. Utah Wilderness Alliance, 542 U.S. 55 (2004)*. Because only final agency actions fall under Section 702's

general waiver of sovereign immunity, the issue which must be determined is whether the agency decision which the Court is called upon to review is final agency action. The APA defines "agency action" as an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *5 U.S.C. §551(13).* Further, agency action is not "final" for purposes of §704 until an "aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros, 509 U.S. 137, 146 (1993).*

The actions (and inactions) of the USDA which are challenged by the OPWA are the USDA's failure to comply with state and federal laws in extending the loans in question, and the USDA's failure to perform its duties with respect to graduation requirements for the loans. The OPWA argues these are final actions with respect to which the USDA has failed to exhaust its remedies and asserts a challenge pursuant to the APA.

Additionally, the review scheme provided by Congress in 1994 provides only a "participant" the right to appeal an adverse decision of the Department of Agriculture. 7 U.S.C. §6991-6999. Generally, if an administrative decision of an agency of the USDA is adverse to a participant, that participant has the right to appeal the decision to the USDA National Appeals Division ("NAD"). "Participant" is defined as "any individual or entity who has applied for, or whose right to participate in or receive a payment, loan, loan guarantee, or other benefit in accordance with any program of any agency to which the regulations in this party apply, is affected by a decision of such agency." *7 C.F.R. 11.1; see also, Melissa v Industrial Development Corp. v. North Collin Water Supply, 256 F.Supp.2d 557, 562 (E.D. Tex. 2003), quoting Abbott Laboratories v. Gardner, 387 U.S. 136, 149-50 (1967).*

In *Block v. Cmty. Nutrition Inst., 467 U.S. 340 (1984)*, the Supreme Court held that consumers of dairy products had no standing to obtain judicial review of milk market orders issued

by the Secretary of Agriculture under the Agriculture Marketing Agreement Act ("AMAA"). The Court noted that "[t]he APA confers a general cause of action upon persons adversely affected or aggrieved by agency action . . .but withdraws that cause of action to the extent the relevant statute precludes judicial review." *Id*. at 345 (internal quotations and citations omitted). The Court held that a relevant statute will be found to preclude standing for particular plaintiffs whenever a congressional intent to preclude is "fairly discernible in the statutory scheme." *Id. at 351. (quotations omitted).* The *Block* Court found a fairly discernible congressional intent to preclude consumers from challenging milk market orders in the AMAA and noted that the preclusion would "not threaten realization of the fundamental objectives of the statute." *Id. at 352*. If those without standing were allowed to proceed, they could frustrate achievement of the statutory purposes" by undermining the congressional preference of administrative remedies. *Id*.

As mentioned above, Congress specifically acknowledged and authorized use of the APA with respect to final determinations of the NAD. *7 U.S.C. §6999.* Because Congress specifically limited the circumstances in which APA review is available, it seems "fairly discernible" that others – such as OPWA – are precluded from APA review of administrative decisions. The Supreme Court has held:

> In particular, at least when a statute provides a detailed mechanism for
> judicial consideration of particular issues at the behest of particular
> persons, judicial review of those issues at the behest of other persons
> may be found to be impliedly precluded.

*Block*, 467 U.S. at 349. Congress provided the NAD and expressly authorized APA review for "participants" who utilized the NAD for administrative review. Judicial review of issues at the behest of non-participants, such as the OPWA, is impliedly precluded. Therefore, with respect to the issue of exhaustion, the Court finds the OPWA is not required to exhaust administrative

remedies because it is not a "participant" within the meaning of the review scheme relied upon by the USDA. *See, Melissa Industrial Development Corp. v. North Collin Water Supply,* 265 F.Supp.2d 557, 562 (E.D. Tex. 2003), quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149-50 (1967).

Although the Court finds the OPWA does not have to exhaust administrative remedies, it does have to establish standing as a jurisdictional prerequisite for maintaining a case in a federal forum. *United States v. McVeigh,* 106 F.3d 325, 334 (10th Cir. 1997). The standing inquiry involves constitutional limitations on federal court jurisdiction and prudential limitations on its exercise of that jurisdiction. *See, Warth v. Seldin,* 422 U.S. 490, 498 (1975).

In order to establish standing under Article III of the Constitution, the OPWA must meet three requirements. First, the OPWA must demonstrate that it has "suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Second, plaintiffs must establish causation – "a causal connection" between the injury and the defendant's conduct. Third, "[they] must demonstrate redressability – it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan,* 504 U.S. at 561. They must, in addition to constitutional standing, satisfy the APA's requirement that only persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute" bring suit to challenge a final agency action. 5 U.S.C. §702. Accordingly, the OPWA must have prudential standing under Section 702, which is established only by bringing a cause of action "arguably within the zone of interests to be protected or regulated by the statute in question." *Natl. Credit Union Admin. v. First Nat'l. Bank and Trust Co.,* 522 U.S. 479, 488 (1988).

*See also Clarke v. Securities Industry Assoc., 479 U.S. 388, 395 (1987); Lujan v.Nat'l Wildlife Fed'n, 497 U.S. 871, 893 (1990), and W. Shoshone Bus. Council v. Babbitt, 1 F.3d 1052, 1055 (10th Cir. 1993).*

Although the Supreme Court has approved a trend toward enlargement of the class of people who may protest administrative action, there are limits as to how far this zone of interests doctrine will reach. *Id. at 397.* For example, the Supreme Court has "implicitly recognized the potential for disruption inherent in allowing every party adversely affected by agency action to seek judicial review." *Id.* The Court has struck the balance "in a manner favoring review, but excluding those would-be plaintiffs not even arguably within the zone of interests to be protected or regulated by the statute." *Id.* Specifically, the Court has been concerned that plaintiffs be excluded from standing "whose suits are more likely to frustrate than to further statutory objectives." *Id. at n.12.*

The zone of interest test is a guide for deciding whether in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain about a particular agency decision. *Id. at 399.* "In cases where the plaintiff is not itself the subject of the contested regulatory action," as the OPWA is not here, "the test denies a right of review if the plaintiff's interests are so marginally related to, or inconsistent with, the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* "The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." *Id. at 399-400.*

The OPWA argues that its claims come within the zone of interests protected by 7 U.S.C. §1926(b). The Tenth Circuit, however, has stated that "Congress enacted 7 U.S.C. §1926(b) as part of a federal regulatory scheme to extend loans and grants to certain associations providing ...water service...to farmers, ranchers, and other rural residents." *Sequoyah County Rural Water District No.*

*7 v. Muldrow, 191 F.3d 1192, 1196 (10th Cir. 1999, quoting Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2, 861 F.2d 1211, 1214 (10th Cir. 1988).* More particularly, the Tenth Circuit recognizes two specific purposes of §1926(b). First, "[t]he legislative history of section 1926(b) demonstrates that Congress intended to protect rural water districts from competition in order to encourage rural water development." *Sequoyah, 191 F.3d at 1196.* Second, "[s]ection 1926(b) was intended to provide greater security for the federal loans made under the program." *Sequoyah, 191 F.3d at 1196. See also, Pittsburg County Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694, 715 (10th Cir. 2004)(repeating purpose of §1926(b) as identified in Sequoyah and stating that the statute also had an interest in promoting rural water development by expanding the number of potential users of such systems thereby decreasing the per-user cost).*

Rather than an interest which would "protect the rural water districts from competition," *Sequoyah at 1196*, the OPWA's claims seek to subject the Water District to competition. Rather than "providing greater security" for the federal loans, *Sequoyah at 1196*, the OPWA's claims challenge the security of the loans by potentially reducing the number of residents served by the Water District and thus reducing potential security for the loans. Therefore, the OPWA's interests as alleged in the First Amended Third Party Complaint are adverse to the congressional purposes of §1926(b) as those purposes are recognized by this circuit. The Court concludes that the OPWA does not come within the zone of interests for purposes of prudential standing.

The above determination means the USDA is entitled to be dismissed from the OPWA's claims asserted in the First Amended Third Party Complaint. That determination, in turn, impacts the OPWA's ability to allege its counterclaims against the Water District. As the Water District argues in its Motion to Dismiss Defendant's Constitutional and Graduation Counterclaims (Dkt.# 61 ) the USDA is an indispensable party to the OPWA's constitutional counterclaims, and because

the OPWA lacks standing to pursue its claims against the USDA, the counterclaims must likewise be dismissed.

It does not follow, however, that all of the issues presented by the OPWA's affirmative defenses are no longer present for resolution in this action. Although the OPWA is no longer able to use these arguments to seek affirmative relief in its favor, the validity of the loans remains to be determined as a defense to the Water District's claims.

Therefore, the Court finds the USDA's Motion to Dismiss (Dkt. # 39) is granted. Further, the Water District's Motion to Dismiss (Dkt.# 61) is granted in part as to the constitutional and graduation counterclaims alleged by the OPWA against the Water District. These counterclaims are dismissed without prejudice due to the OPWA's lack of prudential standing under the Administrative Procedures Act. The Water District's Motion to Dismiss (Dkt.# 61) is denied in part as to the affirmative defenses asserted by the OPWA against the claims of the Water District.

Because the United States Department of Agriculture has moved for dismissal from this action, the Court presumes the USDA does not wish to join in the Water District's claims against the OPWA. Accordingly, the USDA is dismissed from this action for all purposes.

**IT IS SO ORDERED this 20th day of August, 2007.**

James H. Payne
United States District Judge
Northern District of Oklahoma